UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— X

THE BANK OF NEW YORK MELLON TRUST :
COMPANY, NATIONAL ASSOCIATION, TRUSTEE :
FOR THE REGISTERED CERTIFICATE HOLDERS :
OF   MORGAN   STANLEY   CAPITAL   I   INC., :    11  CV  0505  (CM)  (GWG)
COMMERCIAL   MORTGAGE   PASS-THROUGH :    ECF CASE
CERTIFICATES   SERIES   2007-IQ14,   ACTING   BY :
AND THROUGH C-III ASSET MANAGEMENT LLC, :
AS SPECIAL SERVICER, :
                                                   :

                    Plaintiff, :

                     :

        -against- :

                     :

MORGAN STANLEY MORTGAGE CAPITAL INC., :

                     :

                  Defendant. :

——————————————————————— X

**DEFENDANT MORGAN STANLEY MORTGAGE CAPITAL INC.'S
MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys  for  Defendant  Morgan  Stanley
Mortgage Capital Inc.*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .................................................................................................... 1

RELEVANT UNDISPUTED FACTS ......................................................................................... 3

I.     Plaintiff's Claims Under The MLPA. ................................................................... 3

II.    The Loan Deposited Into The Trust Under The PSA. ........................................... 6

III.   Responsibilities And Inter-Relationship Of The Trust Entities. ........................... 6

IV.   Morgan Stanley's Disclosures Prior To The Securitization Closing. ................... 8

V.    The Trustee And Servicers' Post-Securitization Awareness Of Facts
Relied Upon To Allege The Breaches. ................................................................ 12

VI.   The Notices Of Material Breach Were Sent Far Too Late............................... 13

ARGUMENT ............................................................................................................................ 14

I.     Plaintiff Is Foreclosed From Seeking Relief For The Alleged Breaches of
Representations and Warranties Because It Entered The Transaction With Full
Knowledge And Acceptance Of Facts Disclosed By Morgan Stanley That It
Alleges Constitute The Breaches Of Representations And Warranties. ................... 15

II.    The First And Second Claims For Relief Fail Because The Trustee Did Not
Provide Prompt Notice of the Alleged Breaches As Required Under the MLPA. ......... 21

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*ALJ Capital I, L.P. v. David J. Joseph Co.*
    48 A.D.3d 208 (1st Dep't 2008) ........................................................................ 22, 25

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986). ................................................................................................ 14

*Calgon Carbon Corp. v. WDF, Inc.*
    700 F. Supp. 2d 408 (S.D.N.Y. 2010) .............................................................. 14, 15

*CBS, Inc. v. Ziff-Davis Publ'g Co.*
    75 N.Y.2d 496 (1990) ............................................................................................... 16

*Center v. Hampton Affiliates, Inc.*
    66 N.Y.2d 782 (1985) ............................................................................................... 21

*In re Chateaugay Corp.*
    155 B.R. 636 (Bankr. S.D.N.Y. 1993) .................................................................... 16

*Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.*
    10 F. Supp. 2d 345 (S.D.N.Y. 1998) ...................................................................... 16

*Galli v. Metz*
    973 F.2d 145 (2d Cir. 1992) ........................................................................ 15, 16, 20

*Gulf Ins. Co. v. Transatlantic Reins. Co.*
    69 A.D.3d 71 (1st Dep't 2009) ................................................................................ 21

*Johnston v. Metz*
    No. 87-CV-973, 1993 WL 481395 (N.D.N.Y. Nov. 18, 1993). .............................. 16

*Meese v. Miller*
    79 A.D. 2d 237 (4th Dep't 1981) ............................................................................. 21

*Morgan Guaranty Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*
    No. 00 CIV. 8613(SAS), 2002 WL 818082 (S.D.N.Y. April 30, 2002) ................. 22

*N.Y. Mar. & Gen. Ins. Co. v. Tradeline L.L.C.*
    266 F. 3d 112 (2d Cir. 2001) ................................................................................... 20

*Rogath v. Siebenmann*
    129 F.3d 216 (2d Cir. 1997) .............................................................................. 16, 19

*Ruso v. Morrison*, 695 F. Supp. 2d 33 (S.D.N.Y. 2010) ............................................................... 21

*S. Road Assocs., LLC v. Int'l Bus. Machs. Corp.*
   4 N.Y.3d 272 (2005) .................................................................................................... 22

*Skiff-Murray v. Murray*
   17 A.D.3d 807 (3rd Dep't 2005) ................................................................. ….. 21

*In re Worldcom, Inc.*, 296 B.R. 115 (Bankr. S.D.N.Y. 2003) ..................................................... 21

**Rules**                                                                                        **Page(s)**

Fed. R. Civ. P. 56 .................................................................................................. 14, 25

Defendant Morgan Stanley Mortgage Capital Inc. ("Morgan Stanley") respectfully submits this memorandum of law in support of its motion for summary judgment.

## PRELIMINARY STATEMENT

Judgment should be entered for Morgan Stanley on Plaintiff's breach of representation and warranty claims.  The evidence establishes that before making the representations and warranties at issue, Morgan Stanley provided documents to Plaintiff that disclosed certain facts. Plaintiff claims that those very facts constitute a breach of the representations and warranties. Having received those facts from Morgan Stanley before the representations and warranties were made, however, Plaintiff is precluded under applicable law from pressing its claims.  Moreover, Plaintiff's failure to notify Morgan Stanley of its claims of breach within three business days of discovering the purported breach, as mandated by the relevant agreement, also requires Plaintiff's claims to be dismissed.  These undisputed facts require judgment to be granted in favor of Morgan Stanley on two separate grounds.

First, summary judgment should be granted in favor of Morgan Stanley because Plaintiff is foreclosed from seeking relief based on facts disclosed to it by Morgan Stanley before it entered into the agreements at issue:  a disappointed contracting party may not enforce a warranty if it entered the contract with full knowledge, disclosed by the counterparty, of the facts which it later contends render the warranty false.  Here, it is undisputed that (i) *before* the representations and warranties were made, Plaintiff knew the facts on which it later relied to allege that Morgan Stanley had known that certain representations and warranties were false, and (ii) it learned those facts *from Morgan Stanley*.  Accordingly, if those facts prove that a breach of the representations and warranties occurred (and they do not), then they also prove that Plaintiff was already aware that the representations and warranties were not accurate when Plaintiff

entered the contract and decided to go forward anyway.  Plaintiff therefore is foreclosed from asserting a claim for breach based on those facts.

Second, the Court should enter judgment in favor of Morgan Stanley because Plaintiff did not provide notice as required under the terms of the relevant contract.  The terms are clear and unambiguous:  they require Plaintiff to provide written notice to Morgan Stanley of any material breach of a representation or warranty in the Mortgage Loan Purchase Agreement ("MLPA") within three business days of discovery in order to request a cure or repurchase.  Although it is uncontroverted that Plaintiff (i) as early as May 2007 possessed the documents and information which formed the basis for its misguided conclusion that Morgan Stanley materially breached certain representations and warranties, (ii) was aware of an imminent default of the at-issue loan in September 2008, and (iii) was aware that the loan actually defaulted in November 2008, Plaintiff still failed to provide its First Notice of Material Breach to Defendant until March 18, 2009, well past the three-day notice provision under the agreement.

Moreover, although Plaintiff presses two breach claims in this litigation, the First Notice of Material Breach asserted a breach only of the "Environmental Conditions" representation. Remarkably, Plaintiff did not provide notice of a breach of the second warranty at issue, namely the "No Material Default" representation, until September 24, 2010, over *eighteen months* after providing its first notice – and well after the time allotted under the MLPA expired – even though no new evidence or facts had come to light during that period.  Even if the First Notice of Material Breach can be considered timely (which it cannot), the claim asserted for the first time in the Second Notice of Material Breach, based on the "No Material Default" representation, must be dismissed.

## RELEVANT UNDISPUTED FACTS

On December 29, 2006, Morgan Stanley issued a mortgage loan (the "Mortgage Loan" or the "Loan") to City View Center, LLC ("City View") in the original principal amount of $81,000,000. (Declaration of Steven W. Perlstein dated September 21, 2012, Ex. 1, at P006279, P006294.)[1]  In conjunction with the Mortgage Loan, City View purchased from Garfield Land Development, LLC ("Garfield") certain land and improvements commonly known as the City View Center (the "Property"), which included a retail shopping center with a Wal-Mart store. (Ex. 2, at MSMC0083469; Ex. 3, at P008377; Ex. 6, at P000504.)

### I.  Plaintiff's Claims Under The MLPA.

Morgan Stanley securitized the Loan, along with other loans, as part of a pool.  Pursuant to the securitization process, Morgan Stanley sold the Loan to Morgan Stanley Capital I Inc. ("MS Capital") pursuant to the MLPA dated as of May 1, 2007.  (Ex. 4.)  The MLPA specifies that the Agreement "shall be governed by and construed in accordance with the internal laws and decisions of the State of New York." (Ex. 4, at P033657.)  In the MLPA, Morgan Stanley made certain representations "for the benefit of the Trustee on behalf of the holders of the Certificates." (Ex. 4, at P033648.)  The Plaintiff claims that Morgan Stanley breached two of these representations.  The first is Representation 12(i) of Exhibit 2 to the MLPA (the "Environmental Conditions Representation"), which states:

> With respect to the Mortgaged Properties securing the Mortgage Loans that were the subject of an environmental site assessment after the first day of the month that is 18 months prior to the Closing Date, an environmental site assessment, or an update of a previous such report, was performed with respect to each Mortgaged Property in connection with the origination or the acquisition of the related Mortgage Loan, a report of each such assessment (or the most recent assessment with respect to each Mortgaged

---

[1] All references to exhibits are to exhibits to the Declaration of Steven W. Perlstein dated September 21, 2012 submitted herewith.  The facts set forth here are also set forth with citations to those exhibits in Defendant's Rule 56.1 Statement submitted with this motion.

Property) (an "Environmental Report") has been delivered to the Purchaser, and the Seller [Morgan Stanley] has no knowledge of any material and adverse environmental condition or circumstance affecting any Mortgaged Property that was not disclosed in such report. . . . In connection with the origination of each Mortgage Loan, each environmental consultant has represented in such Environmental Report or in a supplement letter that the environmental assessment of the applicable Mortgaged Property was conducted utilizing generally accepted Phase I industry standards using the American Society for Testing and Materials (ASTM) Standard Practice E 1527-00.

(Ex. 4, at P033667.)  Plaintiff asserts Morgan Stanley breached this representation because, at the time of the making of the representation, Morgan Stanley knew that there were material and adverse environmental conditions affecting the Property that were not disclosed in a Phase I environmental site assessment prepared by IVI Due Diligence Services Inc. ("IVI Report") – the environmental report referenced in the representation and warranty.  (Ex. 23, First Am. Compl. at ¶¶ 134-138, June 30, 2011.)  Plaintiff claims that Morgan Stanley knew, but the IVI Report failed to disclose, that methane had entered the Wal-Mart Store in late 2006 and early 2007 and that the Ohio EPA issued notices of violation related to the Property.  (Ex. 23, at ¶¶ 55-70, 74-77, 80-91.)

The second representation Plaintiff claims Morgan Stanley breached is Representation 27 of the same Exhibit 2 of the MLPA (the "No Material Default Representation"), which states:

To the Seller's [Morgan Stanley] knowledge, there exists no material default, breach, violation or event of acceleration (and no event which, with the passage of time or the giving of notice, or both, would constitute any of the foregoing) under the documents evidencing or securing the Mortgage Loan, in any such case to the extent the same materially and adversely affects the value of the Mortgage Loan and the related Mortgaged Property; . . . .

(Ex. 4, at P033672-73.)  Plaintiff claims that City View was in default under the the lease for the Wal-Mart Store at the time it entered into the Mortgage Loan Agreement and thus the representation by City View that "there are no defaults [under the Leases identified on Schedule I . . .] by either party" was not accurate.  (Ex. 23, at ¶¶ 19-24.)  Plaintiff further claims that City View's false representation was a breach of the Mortgage Loan Agreement, which says an Event

4

of Default occurs "if any representation or warranty made by Borrower herein . . . shall have been *false or misleading* in any material respect as of the date the representation or warranty was made." (Ex. 23, at ¶¶ 21-23) (emphasis in original.) Plaintiff claims that this purported breach of the Mortgage Loan Agreement, in turn, was a breach of the No Material Default Representation in the MLPA because Morgan Stanley was aware of this breach when it made this representation and warranty. (Ex. 23, at ¶¶ 21-24, 72-73, 150-152.)

To request a cure of a breached warranty or representation, the MLPA requires notification to Morgan Stanley within three business days of discovery of any material breach:

> It is hereby further acknowledged that if any document required to be delivered to the Custodian on behalf of the Trustee pursuant to Section 2 is not delivered as and when required (and including the expiration of any grace or cure period), is not properly executed or is defective on its face, or if there is a breach of any of the representations and warranties required to be made by the Seller [Morgan Stanley] regarding the characteristics of the Mortgage Loans and/or the related Mortgaged Properties as set forth in Exhibit 2 hereto, and in either case such defect or breach, either (i) materially and adversely affects the interests of the holders of the Certificates in the related Mortgage Loan, or (ii) both (A) the document defect or breach materially and adversely affects the value of the Mortgage Loan and (B) the Mortgage Loan is a Specially Serviced Mortgage Loan or Rehabilitated Mortgage Loan (such a document defect described in the preceding clause (i) or (ii), a "Material Document Defect" such a breach described in the preceding clause (i) or (ii) a "Material Breach"), the party discovering such Material Document Defect or Material Breach shall promptly notify, in writing, the other party; . . . *Promptly (but in any event within three Business Days)* upon becoming aware of any such Material Document Defect or Material Breach, the Master Servicer shall, and the Special Servicer may, request that the Seller, not later than 90 days from the Seller's receipt of the notice of such Material Document Defect or Material Breach, cure such Material Document Defect or Material Breach, as the case may be, in all material respects; . . . .

(Ex. 4, at P033648, P033652) (emphasis added.) The undisputed facts demonstrate that Plaintiff did not provide Morgan Stanley with notice within three business days of becoming aware of a breach.

## II.  The Loan Deposited Into The Trust Under The PSA.

To securitize the Mortgage Loan and other loans, MS Capital deposited the Mortgage Loan into a trust designated Morgan Stanley Capital I Trust 2007-IQ14 (the "Trust"), created by a Pooling and Servicing Agreement dated May 1, 2007 (the "PSA").  (Ex. 5, at MSMC0021231, MSMC0021322.)  Although the Trustee is not a party to the MLPA, MS Capital, through the PSA, assigned and transferred Morgan Stanley's Environmental Conditions Representation and No Material Default Representation in the MLPA to the Trustee.  (Ex. 4, at P033645, P033648, P033658; Ex. 5, at MSMC0021329.)  The notice provision in the PSA also requires notice "[p]romptly (but in any event within three Business Days) upon becoming aware of any such Material Document Defect or Material Breach…."  (Ex. 5, at MSMC0021335.)

## III.  Responsibilities And Inter-Relationship Of The Trust Entities.

The PSA outlines the roles and responsibilities of the entities administering the Trust. Plaintiff Bank of New York Mellon Trust Company, National Association is the current Trustee. (Ex. 5, at MSMC0021322; Ex. 6, at P000360.)  The PSA also appointed a master servicer and special servicer for the Morgan Stanley loans deposited in the Trust.  The PSA appointed Wells Fargo as the Master Servicer and Centerline Servicing, Inc. ("Centerline") as the Special Servicer.  (Ex. 5, at MSMC0021283-84, MSMC0021319.)  C-III Asset Management LLC is the successor to Centerline and is the current Special Servicer.  (Ex. 10, at P033830.)

The Servicers have certain responsibilities for servicing the loans in the Trust, and actually hold files on behalf of the Trustee.  (Ex. 5, at MSMC0021449 (Master Servicer), MSMC0021490 (Special Servicer).)  The Trustee also signed separate powers of attorney giving the Master Servicer and Special Servicer the authority "[t]o perform any and all acts which may be necessary or appropriate" to enable each Servicer "to service and administer the Mortgage

Loans (as defined in the Pooling and Servicing Agreement) in connection with the performance" of their duties as Servicer.  (Ex. 7, at MSMC0030691; Ex. 8, at MSMC0030694.)  With written consent, the powers of attorney also granted each Servicer the ability to initiate any action, suit or proceeding as representative of the Trustee.  (Ex. 7, at MSMC0030691; Ex. 8, at MSMC0030694.)

Before the Mortgage Loan was placed in the Trust to be securitized, the Mortgage Loan was serviced by an interim servicer, ARCap Servicing, Inc., the predecessor entity to Centerline and C-III Asset Management LLC (in general, an interim servicer services a loan before it is placed in a securitization).  (Ex. 9, at P035673; Ex. 10; Ex. 5, at MSMC0021319; Ex. 11, Wilkicki Dep. at 158:11-21, Mar. 16, 2012.)  Morgan Stanley sent various documents related to the Loan to ARCap/Centerline/C-III Asset Management through an email address labeled msdocs@arcap.com.  (Ex. 11, Wilkicki Dep. at 23:6-24:2; Ex. 16, Ex 10.)  ARCap Servicing, Inc., Centerline and C-III Asset Management, collectively, are referred to herein as "C-III", and the Trustee and Servicers are referred to as the "Trust Entities."

Finally, the Special Servicer and the controlling class certificate holder in the Trust are related and have overlapping employees and management.  C-III Asset Management LLC (the Special Servicer) is owned by C-III Capital Partners LLC, which also owns a share of the controlling class certificate holder in the Trust, commonly referred to as the B-piece investor (the "B-piece Investor").  (Ex. 5, at MSMC0021266-67; Ex. 11, Wilkicki Dep. at 137:11-138:13, 141:7-10, 152:1-155:20; Ex. 15.)  At and around the time of the securitization in May 2007, Paul Smyth was the Chief Operating Officer of the B-piece Investor, as well as the President of Centerline, and signed the PSA on behalf of Centerline.  (Ex. 5, at MSMC0021576; Ex. 12, at MSMC0050876.)  In fact, the Special Servicer and the B-piece Investor are so intertwined that

employees of C-III, including Jennifer Wilkicki, Jeff Row and Paul Smyth, who were involved in servicing the Mortgage Loan, also had conducted a review of documents regarding the loans in the Trust on behalf of the B-piece Investor leading up to the securitization. (Ex. 11, Wilkicki Dep. at 37:5-21, 47:14-48:10, 71:13-77:10, 150:1-13, 156:7-158:8, 159:8-160:17, 173:21-174:1.)

### IV.  Morgan Stanley's Disclosures Prior To The Securitization Closing.

It is undisputed that, prior to the securitization closing, Morgan Stanley provided to the Trust Entities *all* of the documents in its possession on which Plaintiff relies.  Ironically (and fatally to its claims), Plaintiff now contends that it is those very documents that establish that the representations and warranties were false.

Plaintiff's Notification of Material Breach dated March 18, 2009 ("First Notice of Material Breach") alleges a breach of the Environmental Conditions Representation and attaches as supporting exhibits:  the IVI Report; and the Morgan Stanley Closing Counsel Transaction Summary ("Closing Counsel Transaction Summary").  Plaintiff contends that the Closing Counsel Transaction Summary demonstrates that the IVI Report, and thus the Environmental Conditions Representation, was inaccurate.  (Ex. 3, at P008375; Ex. 23 at ¶¶ 79-83.)

The IVI Report, which Morgan Stanley provided pre-securitization to the Trust Entities (Ex. 6 at P 000362; Ex. 11 Wilkicki Dep. at 144:13-145:3; Ex. 33), discloses that the Property was formerly utilized as a quarry and later as municipal landfills, identifies an item of "environmental concern," and specifically reports that the Property "is operating under the supervision of the Ohio EPA" and has a "gas extraction system to remove methane from beneath the structures, if necessary." (Ex. 3, at P008406, P008408, P008433.)  In addition, it also discloses the existence of numerous notices of violation issued by the Ohio EPA ("NOVs") and attaches an exhibit showing the estimated cost of addressing them. (Ex. 3, at P008406, P008408,

P008421-22, P008433, P008508-10.)  The IVI Report recommends "continued compliance with regulatory requirements as well as monitoring of the methane gas extraction system."  (Ex. 3, at P008406, P008408, P008433.)  It is undisputed that prior to securitization, C-III received and reviewed the IVI Report.  (Ex. 11, Wilkicki Dep. at 76:6-24, 143:12-145:3; Ex. 33; Ex. 6 at P000362.)

The First Notice of Material Breach contends C-III "discovered" that the IVI Report failed to disclose certain conditions upon reviewing the Closing Counsel Transaction Summary, and alleges that the IVI Report did not address "numerous 'notices of violation' issued by the Ohio Environmental Protection Agency" that are referenced in the Closing Counsel Transaction Summary.  (Ex. 3, at P008375, P008388.)  Putting aside the fact that the IVI Report does, in fact, address the NOVs, Morgan Stanley provided the Closing Counsel Transaction Summary to C-III in January 2007, well prior to securitization and *more than two years* before the First Notice of Material Breach was issued.  (Ex. 11, Wilkicki Dep. at 113:16-22; Ex. 16.)[2]

In its Second and Supplemental Notification of Material Breach dated September 24, 2010 ("Second Notice of Material Breach"), Plaintiff relied on additional documents, also provided by Morgan Stanley prior to securitization, to claim that Morgan Stanley breached the Environmental Conditions Representation.  With the exception of a report prepared by another environmental firm (the "HzW Report") discussed below, which even Plaintiff now agrees

---

[2] The Closing Counsel Transaction Summary states that the Phase I environmental report "did not address numerous 'notices of violation' issued by the [Ohio EPA] that the Property and adjoining properties are subject to."  In fact, the NOVs *were* addressed in the IVI Report.  The Closing Counsel Transaction Summary, which is dated January 4, 2007 (Ex. 3, at P008387), was prepared prior to the updated versions of the IVI Report received by Morgan Stanley and Plaintiff after January 4 but before the securitization closed.  (Ex. 3, at P0008375, P0008404-510; Ex. 6, at P000362, P000368-474; Ex. 11 Wilkicki Dep. at 144:13-145:3; Ex. 13; Ex. 14; Ex. 33.)  In the updated versions of the IVI Report (which are attached to Plaintiff's notices of breach) the NOVs are addressed.  (Ex 3, at P008406, P008408, P008421-22, P008433, P008508-10; Ex. 6, at P000370, P000372, P000397, P000385, P000472-74.)

Morgan Stanley did not possess (Ex. 24, at Interrog. No. 4.), Morgan Stanley provided all documents now relied upon by the Trust Entities before securitization, and years in advance of both claims.  Plaintiff also claimed, for the first time, that Morgan Stanley breached the No Material Default Representation because the Wal-Mart lease was in default as of the Loan closing.  (Ex. 6, at P000361, P000363-64.)

Plaintiff attached two additional documents to its Second Notice of Material Breach. First, Plaintiff attached an estoppel document addressed to Morgan Stanley and dated December 28, 2006 (the "Wal-Mart Estoppel"), in which Wal-Mart confirms its City View Lease is "in full force and effect," but discloses that there was methane detected at the Wal-Mart Store, and that the Store closed for two days in December 2006, and further reserves its rights and remedies under the Lease, including to withhold or abate rent to address damages incurred by Wal-Mart. (Ex. 6, at P000362, P000504-05.)  The estoppel also notes that work will still be needed in the "future" to address these issues.  (Ex. 6, at P000505.)  Plaintiff also attached a December 29, 2006 letter from City View counsel Joseph M. Reidy to Morgan Stanley regarding the environmental issues at the Property (the "December 29 Reidy Letter").  (Ex. 6, at P000363, P000615.)   In its Second Notice of Material Breach, Plaintiff also referenced two letter agreements between Wal-Mart and Garfield concerning environmental conditions at the Wal-Mart Store, which, among other things, addresses methane intrusions in the Store in November and December 2006 (the "Wal-Mart December 26 and December 28 Letter Agreements").  (Ex. 6, at P00362; Ex. 18; Ex. 19.)  Prior to securitization, Morgan Stanley provided *all* of these documents to C-III.  (Ex. 11, Wilkicki Dep. at 104:7-105:1, 121:16-122:3, 143:17-144:3; Ex. 20, Evans Dep. at 56:12-58:3, Mar. 15, 2012; Ex. 21, at MSMC0000002-03 (listed as document No. 50, "Letter from Schottenstein, Zox and Dunn Co., LPA regarding environmental insurance

coverage"; No. 65, "Side letter agreement with Wal-Mart regarding Methane gas monitoring"; No. 67, "Side letter agreement with Wal-Mart regarding warranty work"; and No. 93, "Wal-Mart").)

The only other document that Plaintiff attached to its Second Notice of Material Breach is the HzW Report, which Plaintiff contends contained material and adverse information about the Property not included in the IVI Report. (Ex. 23, at ¶¶ 42-51.) While Plaintiff in its Complaint had used the HzW Report to claim that Morgan Stanley knew that IVI allegedly improperly labeled the methane at the Property an "environmental concern," when the HzW Report called it a "recognized environmental condition" (Ex. 23, at ¶ 51), Plaintiff has not proffered any evidence that Morgan Stanley possessed the HzW Report prior to making the Environmental Conditions Representation. Similarly, while Plaintiff, in the Complaint, alleges "upon information and belief" that Morgan Stanley was aware and had knowledge of the contents of the HzW Report (Ex. 23, at ¶ 52), Plaintiff no longer contends that Morgan Stanley possessed that report. (Ex. 24, at Interrog. No. 4.)

In addition to the documents referenced above, Morgan Stanley provided other documents to the Trust Entities prior to the securitization disclosing the nature of the environmental conditions and Wal-Mart issues at the Property. Morgan Stanley provided an Asset Summary Report ("ASR"), dated March 19, 2007 which, among other things, references the Property's prior landfill usage and gas extraction system; weekly reports submitted to the Ohio EPA; the fact that "elevated methane was detected in the Wal-Mart store"; that there was a "two-day closure of the Wal-Mart" in December 2006; and that "[i]n February 2007, Wal-Mart notified the property manager of alleged continued methane gas intrusions." (Ex. 22, at P033460, P033475.) C-III even acknowledges that it reviewed the ASR, which Morgan Stanley

11

provided to it prior to the closing of the securitization, and which C-III understood to reflect Morgan Stanley's knowledge of the facts.  (Ex. 11, Wilkicki Dep. at 71:13-73:13; 75:5-78:8.)

V.    **The Trustee And Servicers' Post-Securitization Awareness Of Facts Relied Upon To Allege The Breaches.**

On July 7, 2008, the Ohio EPA filed a suit (the "OEPA Complaint") against City View and Garfield, among other defendants.  The OEPA Complaint alleged the defendants had failed "to prevent the migration of landfill gas" and sought civil penalties of up to ten thousand dollars for each day of each violation.  (Ex. 25, at Wells004532, Wells004554.)  Wells Fargo, the Master Servicer, received the OEPA Complaint on or before July 21, 2008, and that complaint formed the basis of an August 21, 2008 Wells Fargo notice of default to City View.   (Ex. 25, at Wells004500, Wells004559-60; Ex. 26.)  Despite the fact that Wells Fargo asserted a default against City View and, the following month, in September, notified C-III of the litigation and presented its analysis to C-III that a default was imminent or was likely to occur within 60 days (Ex. 17, Brewster Dep. at 69:14-71:7; Ex. 27, at P026804), neither Wells Fargo nor C-III gave notice to Morgan Stanley of a breach at that time.

Wal-Mart ultimately closed its store at the Property on September 15, 2008, and the Servicers learned of the closure that same day.  (Ex. 11, Wilkicki Dep. at 65:25-67:10; Ex. 28, at P032294; Ex. 29.)  City View defaulted on the Loan on November 8, 2008, and Wells Fargo transferred the Loan to C-III for special servicing on November 12, 2008.  (Ex. 11, Wilkicki Dep. at 29:2-6, 228:4-11, 252:5-6; Ex. 30.)  Notwithstanding Plaintiff's knowledge of the default and of the documents it now claims demonstrate Morgan Stanley's culpable knowledge, it still made no claim against Morgan Stanley.

**VI.    The Notices Of Material Breach Were Sent Far Too Late.**

Rather than take any action or provide notice to Morgan Stanley in August 2008 when Wells Fargo sent the notice of default to City View, in September 2008 when the Wal-Mart Store closed, or even in November 2008 when the Loan was transferred to special servicing, Wells Fargo and C-III said nothing.  Indeed, C-III only memorialized its conclusion that Morgan Stanley had breached the Environmental Conditions Representation on or about February 16, 2009, in a memorandum entitled "MSMC 2007-IQ14, Prospectus Loan 008, Loan Number 700401543, City View Center, LLC / Representation and Warranty Claim" (the "Claim Memorandum").   (Ex. 32.)   The Claim Memorandum provides that C-III "believes it has discovered a Material Breach of [Morgan Stanley's] Representations and Warranties." (Ex. 32, at P007228.)   It then goes on to discuss a claimed breach of the Environmental Conditions Representation which C-III believed was evidenced by information in the Closing Counsel Transaction Summary.  (Ex. 32, at P007228.)   The Claim Memorandum acknowledges the requirement that notice and request for cure or repurchase be given within three business days of discovering a breach.  (Ex. 32, at P007230.)  Yet despite C-III's claim of breach and its obvious awareness of the notice provision, C-III still did not send a notice of breach to Morgan Stanley in February 2009.

C-III's belated action is both contrary to the contractual provisions (as discussed below), and shows a remarkable lack of diligence, as the same C-III personnel involved in the 2007 pre-securitization review for the B-piece Investor of the documents provided by Morgan Stanley, including Jennifer Wilkicki and Jeff Row, participated in the post-default "investigation."  (Ex. 11, Wilkicki Dep. at 127:9-16, 160:1-17; Ex. 23, at ¶ 125; Ex. 31.)  C-III acknowledges that no

new facts were learned during its post-default "investigation," and that the review was just an "analysis of the facts that C-III had." (Ex. 11, Wilkicki Dep. at 128:18-130:9.)

Finally, on March 18, 2009 – seven months after the August 2008 notice of default to City View, four months after the City View Loan defaulted in November 2008, and a full month after its own written conclusion that Morgan Stanley had breached the warranties – C-III issued its First Notice of Material Breach to Morgan Stanley on behalf of the Trust, alleging a breach of the Environmental Conditions Representation. (Ex. 3, at P008374-76.) Notably, no claim based on the No Material Default Representation was made at this time.

Over 18 months later, on September 24, 2010, after C-III conducted another "investigation" which it acknowledges uncovered no new facts (Ex. 11, Wilkicki Dep. at 130:10-135:4.), C-III issued the Second Notice of Material Breach to Morgan Stanley on behalf of the Trust.  (Ex. 6, at P000360-66.)  This notice again alleged a breach of the Environmental Conditions Representation, and for the first time alleged a breach of the No Material Default Representation. (Ex. 6, at P000361, P000363.)

## ARGUMENT

A party is entitled to summary judgment where there are no genuine issues of material fact.  Fed. R. Civ. P. 56.  "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Once the moving party meets its "burden of demonstrating the absence of a disputed issue of material fact," the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Calgon Carbon Corp. v. WDF, Inc.*, 700 F. Supp. 2d 408, 414 (S.D.N.Y. 2010) (citing FRCP 56(e)).  The opposing party "'may not rely on conclusory allegations or unsubstantiated speculation'" and "'must do more

14

than simply show that there is some metaphysical doubt as to the material facts.'" *Id.* (citations omitted).

Here, as shown below, Plaintiff is legally foreclosed from pursuing its claims for relief because, prior to the time when the representations and warranties at issue were made in May 2007, Morgan Stanley provided to Plaintiff all the documents and information in its possession which Plaintiff now asserts constitute breaches of those representations and warranties. Further, Plaintiff cannot pursue its claims for relief because it has failed to satisfy the provisions of the MLPA, which required that it submit any notice of material breach requesting that a loan be repurchased within three business days of becoming aware of such breach.

I. **Plaintiff Is Foreclosed From Seeking Relief For The Alleged Breaches of Representations and Warranties Because It Entered The Transaction With Full Knowledge And Acceptance Of Facts Disclosed By Morgan Stanley That It <u>Alleges Constitute The Breaches Of Representations And Warranties.</u>**

Summary judgment should be granted because the facts not in dispute establish that Plaintiff entered the contract with full knowledge, provided by Morgan Stanley, of the facts which it later claimed it had "discovered" constitute a breach.

New York law is clear that "[w]here a buyer closes on a contract in the full knowledge and acceptance of facts disclosed by the seller which would constitute a breach of warranty under the terms of the contract, the buyer should be foreclosed from later asserting the breach. In that situation, unless the buyer expressly preserves his rights under the warranties . . . the buyer has waived the breach." *Galli v. Metz*, 973 F.2d 145, 151 (2d Cir. 1992). In *Galli*, plaintiff alleged that defendant had failed to disclose environmental contamination at a property prior to the sale of a business, in violation of defendant's warranty that the sellers did not know of facts "which might adversely affect the business or condition . . . of [the] properties." *Id.* at 150. The Second Circuit held that plaintiff's own knowledge of the contamination, if learned

15

from defendant, would vitiate a claim for breach, and remanded for a factual finding on that issue. *Id.* at 150-151. On remand, the district court found that defendant had "stated at the closing that there was a contamination problem at the . . . site," and thus the breach of warranty claim was waived. *Johnston v. Metz*, No. 87-CV-973, 1993 WL 481395, at *5 (N.D.N.Y. Nov. 18, 1993).

The Second Circuit has explained the reasoning behind the rule: "[W]here the seller discloses up front the inaccuracy of certain of his warranties, it cannot be said that the buyer – absent the express preservation of his rights – believed he was purchasing the seller's promise as to the truth of the warranties. Accordingly, what the buyer knew and, most importantly, whether he got that knowledge from the seller are the critical questions." *Rogath v. Siebenmann*, 129 F.3d 216, 265 (2d Cir. 1997) (holding the "crucial" question was whether seller informed buyer of challenge to authenticity of painting) (citing *Galli,* 973 F.2d at 151, and *In re Chateaugay Corp.*, 155 B.R. 636, 650-51 (Bankr. S.D.N.Y. 1993)); *see also Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.*, 10 F. Supp. 2d 345, 362 (S.D.N.Y. 1998) (plaintiff closed "with knowledge obtained from [defendant] that [defendant] was in breach of the warranty . . . and therefore may not recover for that breach").

A party preserves its rights to a breach of warranty claim by "expressly stating that disputes regarding the accuracy of the seller's warranties are unresolved, and that by signing the agreement the buyer does not waive any rights to enforce the terms of the agreement." *Rogath*, 129 F.3d at 264-65 (citing *Galli,* 973 F.2d at 151); *see also CBS Inc. v. Ziff-Davis Publ'g Co.*, 75 N.Y.2d 496, 501-504 (1990) (acknowledging an express reservation of rights where a contracting party expressly identified a dispute over the accuracy of financial statements and

reserved its rights under the agreement, including the warranty as to the accuracy of those statements).

Morgan Stanley contests the allegations that it breached any representation or warranty in the MLPA, but this Court need not reach that issue to decide this motion.  It is undisputed that, prior to securitization, Morgan Stanley provided the Trust Entities with the documents and information Plaintiff now contends render the representations false, and Plaintiff entered the securitization transaction anyway, without reserving its rights.  As discussed in detail below, the documents which Morgan Stanley provided to the Trust Entities prior to securitization disclosed the very facts which Plaintiff claims were not disclosed in the IVI Report, and upon which plaintiff now pins its belated claims for breach of representations and warranties:

- The IVI Report discloses the Property's former use as landfills, an item of "environmental concern," various NOVs, the Ohio EPA supervision of the Property, and gas extraction system.  (Ex. 3, at P008406, P008408, P008433, P008508-10.)

- The Closing Counsel Transaction Summary states that NOVs were not addressed in the "Phase I environmental report."   (Ex. 3, at P008388. *See supra* footnote 2 (explaining that NOVs were addressed in the updated versions of the IVI Report received by Plaintiff).)

- The Wal-Mart Estoppel discloses the methane detection and two-day closure of the Wal-Mart Store in December 2006, that Wal-Mart reserved its rights and remedies under the Lease, including to withhold or abate rent to address damages incurred by Wal-Mart, and that future maintenance and repairs are still necessary by the Landlord. (Ex. 6, at P000504-05.)

- The December 29 Reidy letter references NOVs.  (Ex. 6, at P000615.)

- The Wal-Mart December 26 and 28 Letter Agreements describe a "methane gas intrusion identified in November and December, 2006 at the [Wal-Mart Store]" at levels "above 100% of the lower explosive level," methane monitoring and work to be performed at the Wal-Mart Store.  (Ex. 18, at P033489; Ex. 19, at P033495, P033499.)

- The ASR discloses, among other things, the methane detection and two-day closure of the Wal-Mart Store in December 2006 and the alleged methane intrusion in the Wal-Mart store in February 2007.  (Ex. 22, at P033460, P033475.)

All of the above documents were provided prior to the closing of the securitization and demonstrate that Plaintiff was aware, from the very information Morgan Stanley provided to it, that there was a contention that methane had intruded into the Wal-Mart Store in late 2006 and early 2007, that NOVs had been issued on the Property, and that Morgan Stanley was aware of these things.  Accordingly, to the extent those documents demonstrate that information was missing from the IVI Report (purportedly in breach of the Environmental Conditions Representation), Plaintiff had obtained that information from Morgan Stanley before the securitization closed, and it closed anyway without reserving its rights to a breach of warranty claim.  Similarly, with respect to the No Material Default Representation, to the extent that those documents demonstrate there was a breach of that representation and warranty, Plaintiff had that information before closing and still closed on the transaction without any reservation of rights.

The specific documents referenced in Plaintiff's notice of breach letters demonstrate that its claims are barred.  In its First Notice of Material Breach Plaintiff claimed it had "discovered" that the Closing Counsel Transaction Summary rendered the Environmental Conditions Representation false because the Summary allegedly contained information about the Property that was not contained in the IVI Report.  (Ex. 3, at P008375, P008388.)  To the extent Plaintiff relies on the Closing Counsel Transaction Summary, however, Morgan Stanley had provided the Closing Counsel Transaction Summary to C-III prior to securitization.  (Ex. 11, Wilkicki Dep. at 113:16-22; Ex. 16.)

In the Second Notice of Material Breach the Trustee cited and/or attached additional documents in support of both breach claims:  the Wal-Mart Estoppel, the December 29 Reidy letter, and the Wal-Mart December 26 and 28 Letter Agreements.  (Ex. 6, at P000362-64, P000504-05, P000615.)   Again, Morgan Stanley provided each of these letters prior to

securitization to the Trust Entities.[3]   (Ex. 11, Wilkicki Dep. at 104:7-105:1, 121:16-122:3,

143:17-144:3; Ex. 20, Evans Dep. at 56:12-58:3; Ex. 21, at MSMC0000002-03.)

Morgan Stanley also provided additional documents to the Trust Entities regarding the

environmental conditions at the Property and the Wal-Mart tenancy.  Morgan Stanley provided

C-III with the ASR, which discussed the prior landfill usage and the weekly reports submitted to

the Ohio EPA, and specifically noted that "elevated methane was detected in the Wal-Mart

store," that there was a "two-day closure of the Wal-Mart" in December, and that in "February

2007, Wal-Mart notified the property manager of alleged continued methane gas intrusions."

(Ex. 22, at P033460, P033475.)   C-III acknowledges that it reviewed the ASR prior to closing

on the securitization and recognized that the ASR reflected Morgan Stanley's understanding of

the facts.  (Ex. 11, Wilkicki Dep. at 71:13-78:8.)

Within this litigation, Plaintiff points to the same facts set forth in these documents to

support its claim that Morgan Stanley knew the representations were false when they were made:

the Property's prior use as a landfill, the methane intrusion at the Wal-Mart Store, and the

closure of the Wal-Mart Store.   (Ex. 24, at Interrog. No. 1.)   If these documents and this

information, which Morgan Stanley provided prior to the securitization, show (i) that the

representations are false (an allegation Morgan Stanley disputes) and (ii) that Morgan Stanley

was aware of such alleged falsity, then they also conclusively show that Plaintiff entered into the

transaction aware of these facts without registering any dispute or reservation of rights.  *See*

*Rogath*, 129 F.3d at 264-65.  Thus, Plaintiff entered the transaction with "full knowledge and

---

[3] The HzW Report is also cited in and attached to the Second Notice of Material Breach (Ex. 6, at P000363, P000366, P000506-613), however, Plaintiff does not contend that Morgan Stanley was in possession of or was aware and had knowledge of the contents of the HzW Report prior to the securitization closing.  (Ex. 24, at Interrog. No. 4.)  The reference to the HzW Report in the December 29 Reidy Letter does not suggest otherwise.  (Ex. 6, P000615.)

acceptance of facts disclosed by the seller," and the waiver rule squarely applies to bar Plaintiff's claims.  *See Galli*, 973 F.2d at 151.

Any attempt the Plaintiff may make to disavow facts and documents Morgan Stanley provided to it and its Servicers must be rejected.   Servicers Wells Fargo and C-III are indisputably the agents of the Trustee.   The PSA makes clear that the Master and Special Servicers are responsible for taking a whole host of actions on behalf of the Trustee, including but not limited to, opening accounts, reporting information for securities filings, maintaining loan files, servicing and administering the mortgage loans, executing and delivering various documents "on behalf of . . . the Trustee" or Trust, and initiating legal proceeding in the name of the Trust in certain circumstances.    (Ex. 5, at MSMC0021362, MSMC0021429-31, MSMC0021482-3, MSMC0021541-56.)  As noted above, the Trustee signed separate powers of attorney giving the Master Servicer and Special Servicer the authority "[t]o perform any and all acts which may be necessary or appropriate" to enable each Servicer to service and administer the Mortgage Loans.  Both the PSA and the powers of attorney also demonstrate that the Trustee exercises control:  Only with written consent of the Trustee may the Servicers initiate an action for breaches of representations and warranties solely under the Trustee's name, engage counsel to represent the Trustee in such an action, or prepare certain government filings.  (Ex. 5, at MSMC0021432; Ex. 7, at MSMC0030691; Ex. 8, at MSMC0030694.)   Moreover, the PSA provides that the Special Servicer acts as an agent of the Trustee, such as when it initiates an action or foreclosure proceeding "in the name of the Trust."  (Ex. 5, at MSMC0021483.)

These facts indisputably establish an agency relationship.  *See N.Y. Mar. & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F. 3d 112, 122 (2d Cir. 2001) (agency relationship "'results from a manifestation of consent by one person to another that the other shall act on his behalf and

20

subject to his control, and the consent by the other to act'") (quoting *Meese v. Miller*, 79 A.D. 2d

237, 241 (4th Dep't 1981)); *Ruso v. Morrison*, 695 F. Supp. 2d 33, 51 (S.D.N.Y. 2010) ("[t]he

general rule is that a written power of attorney creates a principal/agent relationship"); *accord In

re Worldcom, Inc.*, 296 B.R. 115, 121 n.2 (Bankr. S.D.N.Y. 2003).  In light of these facts, and

especially where the Trustee and C-III rely on this principal/agent relationship as the basis for

bringing this lawsuit, the PSA's statement that the servicers are independent contractors and not

agents is ineffective.   (Ex. 5, at MSMC0021434, MSMC0021483.)   *See Gulf Ins. Co. v.

Transatlantic Reins. Co.*, 69 A.D.3d 71, 96-97 (1st Dep't 2009) (holding that recitation in an

agreement that one entity is "an independent contractor [of another] for all purposes and in all

situations . . . is not effective as a disclaimer of an agency relationship," and knowledge of an

agent is still imputed to the principal).

Moreover, knowledge of information and documents that Morgan Stanley provided to the

Servicers is imputed to the Trustee.  *See Center v. Hampton Affiliates*, *Inc.*, 66 N.Y.2d 782, 784

(1985) ("The general rule is that knowledge acquired by an agent acting within the scope of his

agency is imputed to his principal and the latter is bound by such knowledge although the

information is never actually communicated to it."); *Skiff-Murray v. Murray*, 17 A.D.3d 807, 810

(3d Dep't 2005) ("[t]he agent's knowledge need not be acquired while he or she is performing

services for the principal, and may include information learned in prior transactions and

relationships").  Thus, any knowledge acquired by C-III and Wells Fargo about the Mortgage

Loan is properly imputed to the Trustee.

## II.   **The First And Second Claims For Relief Fail Because The Trustee Did Not Provide Prompt Notice of the Alleged Breaches As Required Under the MLPA.**

The Court should grant summary judgment in favor of Morgan Stanley because Plaintiff

failed to provide notice within three business days of discovery of the alleged breaches as

required by the MLPA.  In order to prevail on its claims of breach, Plaintiff must first establish its own performance.  Under the terms of the MLPA, the party discovering a material breach "shall promptly notify, in writing, the other party" and any request to cure such a breach must be made "[p]romptly (but in any event within three Business Days) upon becoming aware of any . . . Material Breach."  (Ex. 4, at P0033648, P0033652; Ex. 5, at MSMC0021335.)

New York courts have construed such strict notice provisions as conditions precedent to enforcement of a contract.  *See ALJ Capital I, L.P. v. David J. Joseph Co.*, 48 A.D.3d 208 (1st Dep't 2008) ("The complaint was properly dismissed on the ground that plaintiffs failed to provide prompt written notice"); *Morgan Guar. Trust Co. of N.Y. v. Bay View Franchise Mortg. Acceptance Co.*, No. 00 CIV. 8613 (SAS), 2002 WL 818082, *4 (S.D.N.Y. April 30, 2002) (noting that contract's "prompt notice upon discovery" of breach requirement was condition precedent to sellers' obligation to repurchase and finding notice promptly given where no specific time was referenced in agreement); *see also S. Road Assocs., LLC v. Int'l Bus. Machs. Corp.*, 4 N.Y.3d 272, 277 (2005) ("[I]t is well settled that 'when parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms.'") (citation omitted).  By any calculation, Plaintiff failed to satisfy the terms of the notice provision.

Plaintiff had three business days "upon becoming aware" of a material breach to request cure or repurchase.  (Ex. 4, at P033648, P033652; Ex. 5, at MSMC0021335.)  As this Court held in its prior decision in this case, "to trigger the three day notice period, Plaintiff would have to have known more than that the Borrower was in default or that there were undisclosed environmental conditions at the time the MLPA was executed.  Plaintiff would have had to have also known that *Defendant knew these things* when it warranted the facts were otherwise." (Decision at 16-17 (Dkt. No. 25), 2011 WL 2610661, at *9 (emphasis in original).)

As explained above, it is undisputable that well before Plaintiff gave notice in March 2009 and September 2010, the Plaintiff either itself or through its agents, Wells Fargo and C-III, possessed all of the documents on which it now relies to claim that (i) there was a breach of the representations and warranties at issue, and (ii) Morgan Stanley *knew these things* when it warranted the facts were otherwise.   To establish its claims that there were breaches of representations and warranties and that Morgan Stanley knew of those breaches when it made the representations and warranties, Plaintiff relies on the MLPA, the IVI Report, the Closing Counsel Transaction Summary, the Wal-Mart Estoppel, the Wal-Mart December 26 and December 28 Letter Agreements, and the December 29 Reidy letter.  See *supra* at pp. 8-10.[4]  All of these documents, however, were provided to Plaintiff by Morgan Stanley prior to the closing of the securitization.

Moreover, Morgan Stanley provided C-III a copy of the ASR, which C-III recognized to be Morgan Stanley's understanding of the facts, and which therefore directly establishes that C-III was aware of what Morgan Stanley knew when Morgan Stanley made its representations and warranties.  (Ex. 11, Wilkicki Dep. at 71:13-73:13, 77:14-78:8.)  In that document, Morgan Stanley discussed the prior landfill usage, weekly reports submitted to the Ohio EPA, and that "the Ohio EPA had issued several Notices of Violation," and specifically noted that "elevated methane was detected in the Wal-Mart store" that there was a "two-day closure of the Wal-Mart" in December, and that in "February 2007, Wal-Mart notified the property manager of alleged continued methane gas intrusions."  (Ex. 22, at P033460, P033475.)  Thus, once the Loan defaulted, Plaintiff had all of the information it needed to give notice:  (i) it was aware of an

---

[4]  The Second Notice of Material Breach also attached the HzW Report, which even Plaintiff now concedes Morgan Stanley did not possess.  *See supra* footnote 3.

alleged breach of the representations and warranties at issue; and (ii) it was aware that Morgan Stanley knew those facts at the time it made those representations and warranties.

Plaintiff did not provide notice to Morgan Stanley in August 2008, when the Master Servicer first noticed a default of the Loan, or in November 2008, when there was a payment default, or even in February 2009, when C-III stated in its Claim Memorandum that it "believes it has discovered a Material Breach" of the MLPA and also noted the three-day notice requirement.  (Ex. 26, at P003246-48; Ex. 11, Wilkicki Dep. at 29:2-6, 252:5-6; Ex. 32, at P007228, P007230.)  Instead, as an already bad real estate market continued to deteriorate, Plaintiff waited to provide notice of breach to Morgan Stanley until March 18, 2009, and then only with regard to a claimed breach of the Environmental Conditions Representation.  (Ex. 3, at P008374-76.)  Waiting to provide notice to Morgan Stanley until seven months after Wells Fargo sent the notice of default to City View, and four months after the payment default in November 2008, does not meet Plaintiff's obligation to provide notice within three business days.

The failure to comply with the notice provision is even more egregious with respect to the Second Notice of Material Breach, which for the first time alleged a violation of the No Material Default Representation.  (Ex. 6, at P000361, P000363-64.)  Plaintiff did not deliver the second notice to Morgan Stanley until September 24, 2010.  (Ex. 6, at P000360.)  By its own admission, Plaintiff discovered no new facts or information between the first and second notices of material breach.  (Ex. 11, Wilkicki Dep. at 130:10-135:4.)  Moreover, by February 2009 Plaintiff had conducted an investigation and had determined that there was a material breach of the Environmental Conditions Representation.  (Ex. 32.)  Because Plaintiff possessed all of the relevant documents, and had conducted an investigation in early 2009, there is simply no excuse for Plaintiff to have waited more than *19 months* before delivering its Second Notice of Material

Breach to Morgan Stanley.  Waiting over a year and a half does not constitute prompt notice under the agreement.

Thus, summary judgment should be granted in favor of Morgan Stanley on the first claim for relief, and even more plainly, on the second claim for relief which is based exclusively on the No Material Default Representation, because Plaintiff's failure to satisfy the notice provision of the MLPA is an absolute bar to its claims.  *ALJ Capital I, L.P.*, 48 A.D.3d 208.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the instant motion for summary judgment pursuant to Fed. R. Civ. P.  56.

September 21, 2012
New York, New York

Respectfully submitted,

KOBRE & KIM LLP

By:            /s/ Steven W. Perlstein
Steven G. Kobre (steven.kobre@kobrekim.com)
Steven W. Perlstein (steven.perlstein@kobrekim.com)
Lara Levinson (lara.levinson@kobrekim.com)
Zaharah R. Markoe (zaharah.markoe@kobrekim.com)
Josef M. Klazen (josef.klazen@kobrekim.com)
800 Third Avenue, New York, New York 10022
Tel: +1 212 488 1200 | Fax: +1 212 488 1220

*Attorneys for Morgan Stanley Mortgage Capital Inc.*